UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>v.<br><br>JONG SONG HWA (정성화),<br>RI KYONG SIK (리경식),<br>KIM RYU SONG (김류성),<br>RIM UN CHOL (림은철),<br>KIM MU RIM (김무림),<br>CHO CHUNG POM (조충범),<br>HYON CHOL SONG (현철성),<br>SON UN CHOL (손은철),<br>SOK KWANG HYOK (석광혁),<br>CHOE JONG YONG (최정용),<br>KO CHUNG SOK (고충석),<br>KIM YE WON (김예원),<br>JONG KYONG CHOL (정경철), and<br>JANG CHOL MYONG (장철명),<br><br>Defendants. | ) ) ) ) ) No:  4:24 CR 648 MTS JSD ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) |

## MOTION FOR PRETRIAL DETENTION AND HEARING

COMES NOW the United States of America (the "Government"), by and through Sayler A. Fleming, United States Attorney, and Matthew T. Drake, Assistant United States Attorney, for the Eastern District of Missouri, Jacques Singer-Emery Trial Attorney Department of Justice National Security Division and Ali Cooper-Pointe, Department of Justice Fellow and hereby moves the Court to order the above named and captioned Defendants ("Defendants") detained pending trial, and requests that a detention hearing be held within three days of Defendant's initial

appearance, pursuant to Title 18, United States Code, Section 3142(f)(2). In support of this motion, the Government states as follows:

## INTRODUCTION

All defendants are charged with: one count of Conspiracy to Violate the International Emergency Economic Powers Act in violation of 50 U.S.C. § 1705; one count of Conspiracy to commit wire fraud in violation of 18 U.S.C. § 1349; one count of Conspiracy to Commit Money Laundering in violation of 18 U.S.C. 1956(h); and one count of conspiracy to commit Identity Theft in violation of 18 U.S.C. § 1028. The defendants Cho Chung Pom, Hyon Chol Song, Sok Kwang Hyok, Choe Jong Yong, Ko Chung Sok, Kim Ye Won, Jong Kyong Chol, and Jang Chol Myong are also each charged with one count of Aggravated Identity Theft in violation of 18 U.S.C. § 1028A.

All defendants are nationals and citizens of the Democratic People's Republic of North Korea (hereinafter "DPRK" or "North Korea"). The Defendants collectively pose a serious risk of flight. Upon information and belief, undersigned counsel is informed of the following. The defendants have resided and been employed in the People's Republic of China, Russia and/or the DPRK. None of the defendants have ever traveled to or resided within the United States. All the defendants have income, economic resources and family ties to the DPRK. The offenses carry a maximum penalty of up to twenty-seven years imprisonment. Thus, there is a serious risk the defendants would abscond and there is no condition or combination of conditions that will reasonably assure the defendants future appearance or assure the safety of any other person and the community, and the defendants should be detained pending trial.

## LEGAL STANDARD

2

1.      Under the Bail Reform Act, a defendant must be detained where – as here – two conditions are met: (1) the case involves a serious risk of a defendant's flight, and (2) no conditions can reasonably assure the defendant's appearance or the safety of the community. *See* 18 U.S.C. § 3142(f)(2)(A) ("The judicial officer shall hold a [detention] hearing . . . in a case that involves - - a serious risk that such person will flee[.]"); 18 U.S.C. § 3142(e)(1) (the "judicial officer shall order the detention of the person . . . [i]f, after a [detention] hearing . . . the judicial officer finds that no condition or combination of conditions will reasonably assure the appearance of the person . . . and the safety of any other person and the community").

2.      As the Eighth Circuit has made clear, in determining whether these two conditions are met, this Court need not conduct a "rigid two-step inquiry." *United States v. Cook*, 87 F.4th 920, 924 (8th Cir. 2023). Rather, this Court "permissibly conduct[s] the two inquiries in a single detention hearing," in part, because "the two inquires, while not identical, substantially overlap." *Id.* Indeed, the Eighth Circuit has recognized that "the § 3142(g) factors . . . are relevant both to determining whether [the] defendant presents a serious risk of flight and [whether] there are conditions of release that will reasonably assure [the] defendant's appearance." *Id.* (quoting *United States v. Santos-Flores*, 794 F.3d 1088, 1090 (9th Cir. 2015)).

### **ARGUMENT**

3.      As explained below, there is a serious risk that the defendants will flee if they are not detained pending trial, and there is no condition or combination of conditions that will reasonably assure their appearance.

4.      Each defendant is a citizen of the DPRK who has worked and lived in the Russian Federation and/or the People's Republic of China. The investigation indicates that none of these individuals traveled to the United States or have family connections linking them to the United

States – let alone the Eastern District of Missouri. Moreover, as foreign-based citizens of the DPRK, these individuals have significant relationships with foreign States and governments that routinely decline to extradite charged persons to the United States.

5.      The defendants' backgrounds indicate that they would not abide by any conditions imposed by this Court. In addition to having the ability to flee using resources provided by the DPRK, the defendants have an incentive to abscond based on the strength of the evidence against each of them respectively. *See* 18 U.S.C. § 3142(g)(2). The alleged charges represent the culmination of a multi-year Federal Bureau of Investigation (FBI) investigation into the activities of two North Korean front companies: Yanbian Silverstar, which is based in China, and Volasys Silverstar, which is based in Russia.

6.      Beginning with Executive Order No. 13466, issued pursuant to IEEPA on June 26, 2008, the President found that the situation "on the Korean Peninsula constitute[d] an unusual and extraordinary threat to the national security and foreign policy of the United States and . . . declare[d] a national emergency to deal with that threat."  In September 2018, the Department of Treasury's Office of Foreign Assets Control (OFAC) designated both Yanbian Silverstar and Volasys Silverstar as sanctioned entities for having engaged in, facilitated, or been responsible for the exportation of workers from North Korea, including exportation to generate revenue from the government of North Korea or the Workers' Party of Korea, pursuant to EO 13722. Yanbian Silverstar and Volasys Silverstar were also designated pursuant to EO 13810 for operating in the North Korean IT industry.

7.      The designations were intended to stop the flow of illicit revenue to North Korea from overseas IT workers who disguised their true identities, used aliases, and hid behind front

4

companies and third-party nationals. The revenue generated by these IT workers contributed to North Korea's nuclear weapons and ballistic missile programs.

8. The investigation into these two front companies identified at least 130 North Koreans, including the defendants – who engaged in IT worker schemes from at least April 2017 until March 2023, wherein they posed as U.S. (or non-North Korean) citizens in order to perform IT work for U.S. companies. The defendants and others remitted the money they made back to the DPRK, where, as per public reporting regarding North Korea's IT worker schemes, it was likely earmarked for: (i) the Munitions Industry Department, which controls the DPRK's research and development and productions of weapons – to include nuclear weapons and ballistic missiles – and other military equipment; (ii) the Ministry of Atomic Energy Industry – a critical player in the DPRK's development of nuclear weapons and the day-to-day operations of the DPRK's nuclear weapons program; or (iii) military entities subordinate to the Ministry of Defense and Korea People's Army.

9. The charged defendants are North Korean individuals who held positions in the conspiracy ranging from "IT worker" (the lowest level) to "mission representative" (who led the organization). Throughout the course of the conspiracy, the defendants fraudulently possessed and used the identities of hundreds of U.S. persons and generated millions of dollars in illicit revenue for North Korea. In some instances, real persons' identities were stolen and used to obtain work and set up financial and other accounts. In other cases, the defendants solicited and paid non-North Korean nationals to set up accounts using their own personal information, or information to which they had access, after which control of accounts was transferred to the IT workers. This allowed the defendants to conceal their identity when bidding on and completing freelance projects for

5

clients online, using the infrastructure of the real account holder via remote desktop access. These identities and accounts were also shared among teams of IT workers, including the defendants.

10.     Throughout the conspiracy, the defendants conspired to use the stolen, borrowed, and purchased identities of U.S. persons in order to conceal their true identities as North Koreans and: (1) apply for and obtain remote employment as IT workers with U.S. business and organizations; (2) register internet domain names used to host websites designed to trick U.S. employers into thinking IT worker applicants and employees were currently or previously employed by reputable U.S. businesses; and (3) create money transfer service accounts to receive funds from their U.S. employers and remit those funds to Chinese-based banks.

11.     The defendants also conspired with U.S. persons to purchase laptops or receive laptops from U.S. employers and install remote access programs on them. When the defendants remotely accessed such laptops, it would appear to the U.S. employers that the defendants were performing assigned remote IT work from within the United States. When the defendants gained access to a U.S. employer's sensitive business information, the defendants would occasionally conspire to extort payments from the employer by threatening to release that sensitive information online.

12.     The defendants further obfuscated their identities, locations, and nationality online by using virtual private networks (VPNs) or utilized third-country IP addresses to appear as though they were connecting to the internet from inconspicuous locations and to reduce the likelihood of scrutiny of their non-United States based locations or relationships. In hiding their real locations, the defendants (or the persons they purported to be) violated terms of service agreements for online platforms and the services they used for their activities.

6

13.    The allegations in the indictment are supported with: (1) records obtained from payment service providers (especially online payment service platforms); (2) communications obtained pursuant to a series of search warrants for the defendants' Skype, Slack, and email accounts; (3) witness interviews, including interviews of U.S.-based collaborators and victim companies; and (4) information collected during an FBI undercover operation. Information obtained in the course of the investigation supported the seizure of approximately $2.1 million in proceeds and the seizure of twenty-nine internet domains which the Defendants used to support their scheme.

14.    Further, the defendant's respective history and characteristics necessitate their detention. *See* 18 U.S.C. § 3142(g)(3). A lack of family ties, employment, financial resources, length of residence in the community, community ties, and past conduct all tend toward necessitating detention.

15.    Collectively, the defendants' actions created a danger to the community at large in that proceeds from the illicit activity were used to fund the DPRK's munitions and ballistic missile programs. If the defendants are released and able to successfully abscond, it is likely that they would immediately rejoin Yanbian or Volasys Silverstar and work to generate revenue for the DPRK's munitions and ballistic missile programs

16.    Thus, the totality of factors in Section 3142(g) demonstrate that the defendants present a serious flight risk and that there is no condition or combination of conditions that will reasonably assure their individual appearance in the future and/or the safety of the community.

WHEREFORE, the Government requests that the Court hold a detention hearing within three days of the defendant's initial appearance and, following such hearing, order that each respective defendant be detained pending trial.

Respectfully submitted,

SAYLER A. FLEMING
UNITED STATES ATTORNEY


*s/Matthew Drake*
MATTHEW DRAKE, #46499MO
ASSISTANT UNITED STATES ATTORNEY
Thomas F. Eagleton Courthouse
111 South Tenth Street, 20th Floor
St. Louis, Missouri 63102
(314) 539-2200


MATTHEW G. OLSEN
Assistant Attorney General for National Security


*s/Jacques Singer-Emery*
Jacques Singer-Emery
Trial Attorney


*s/Ali Cooper-Ponte*
Ali Cooper-Ponte
Trial Attorney

9